### In re MOUNT MORIAH ELEVATOR, INC., Debtor.

**Bruce E. STRAUSS, Trustee, Plaintiff/Appellee,**

v.

**STATE of MISSOURI DEPARTMENT, of AGRICULTURE, Defendant/Appellant.**

Bankruptcy No. 92–50405.

Adv. No. 92–5019.

United States Bankruptcy Court, W.D. Missouri.

Oct. 1, 1992.

Scott B. Haines, Merrick, Baker, Fox, Hufft & Strauss, Kansas City, Mo., for plaintiff/appellee.

Mark Weaver, State of Mo., Office of Atty. Gen., Jefferson City, Mo., for defendant/appellant.

### ORDER DENYING MOTION FOR STAY PENDING APPEAL

ARTHUR B. FEDERMAN, Bankruptcy Judge.

The State of Missouri, Department of Agriculture, filed a motion for a stay, pending appeal, of this Court's Order of August 7, 1992. 143 B.R. 905. That Order found that funds being held by the State, in the amount of $86,023.52 plus accrued interest, be turned over to the trustee. Such Order also directed that the trustee segregate the proceeds from certain Certificates of Deposit, totalling $36,078.90 plus interest, for distribution pursuant to further Order of this Court. For the reasons announced in open Court at the conclusion of the hearing

held on September 30, 1992, the motion for stay will be denied.

Section 557 of the Bankruptcy Code (11 U.S.C. § 557) mandates an expedited processing of cases involving grain elevators. Pursuant to that provision, the Trustee is required to propose a timetable having a duration of not to exceed one hundred twenty days for the completion of all procedures necessary to determine ownership of the assets of a grain elevator, liquidation of all assets, and distribution of proceeds to creditors. Pursuant to that provision, the Trustee in this case has proposed a timetable under which debtor's assets would be distributed to its creditors on or before December 5, 1992.

The Bankruptcy Code contains other provisions specifically dealing with distribution of the assets of grain elevators. Section 507(a)(5) grants priority status to persons engaged in the production or raising of grain, to the extent of $2,000. The remainder of such farmers' claims is treated as an unsecured claim, and would share pro rata with other creditors of the debtor who may not be farmers. Under applicable Missouri law, proceeds would be payable to farmers only, and would not be shared with other unsecured creditors of the debtor.

Both parties agree that in order for the State of Missouri to prevail on its motion, it must demonstrate: (a) that it is likely to succeed on the merits of its appeal; (b) that it would suffer irreparable injury if this Court's Order were not stayed pending appeal; (c) that the harm the State will suffer outweighs the potential injury to the trustee if the stay is not granted; and (d) that the stay is in the public interest. *See, In re Blinder, Robinson & Co., Inc.,* 127 B.R. 267 (D.Col.1991).

As stated in open Court, the State of Missouri has not demonstrated that it is likely to succeed on the merits of its appeal. This Court's decision is consistent with the law in this Circuit as expressed in *State of Missouri v. United States Bankruptcy Court for the Eastern District of Arkansas,* 647 F.2d 768 (8th Circuit 1981), cert. denied, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982). In enacting Section 557 and other provisions in the Bankruptcy Code relating to grain elevator bankruptcies, Congress established a specific system for liquidating assets of such debtors, and paying proceeds out to claimants. That specific statutory scheme, and the cases decided pursuant to it, control this case. Unless an appellate court changes the law as interpreted by the Eighth Circuit, the State of Missouri will not prevail on appeal. I find that the State is not likely to succeed on the merits of its appeal.

The State next contends that it will suffer irreparable injury if the stay is denied. In support, the State contends that this Court's decision creates a precedent which might have an adverse impact on other situations involving grain elevators in the state. However, this case creates no precedent; it simply follows the law interpreted in this circuit. If the State of Missouri wishes to challenge the Eighth Circuit's interpretation of the law, or to argue that the facts of this case are somehow different from other cases, it may do so on appeal. Since the State does have a right of appeal, it cannot argue that it will suffer irreparable injury because of an adverse precedent created by this Court's decision.

In connection with the irreparable injury issue, it should be noted that the real parties in interest here are the farmers and other creditors of the debtor, not the state. The State of Missouri simply holds the proceeds for the benefit of farmers with claims against the debtor. Those farmers will not suffer irreparable injury if the stay is denied; in fact, those farmers are more likely to suffer irreparable injury if a stay were to be granted. It is highly unlikely that this appeal can be processed by both the District Court and the Court of Appeals in less than one year, given briefing schedules, oral argument, and the time necessary to render a decision. Yet the bankruptcy trustee is prepared to make distribution to all creditors by December 5, 1992, approximately 65 days after this Court's hearing on the State's motion for a stay pending appeal. The creditors will receive their money much more quickly than if a distribution were delayed pending appeal.

And, it should be noted that no matter what happens on appeal, substantially the same amount of money will be distributed to the same creditors. As noted, the Federal Bankruptcy Code mandates that all creditors, not just farmers, share in the distribution of assets of a grain elevator. A review of the schedules filed by the debtor with the Bankruptcy Court demonstrates that the debtor shows total unsecured debt of $208,136.15. Of that total, $196,828.06 represents debts due to farmers who had claims pending before the State Department of Agriculture at the time the bankruptcy case was filed. Thus, 95% of the unsecured claims to be paid will be identical whether distribution is made by the bankruptcy trustee or the State of Missouri. Given the delay which would be created by the granting of a stay pending appeal, and given that the bankruptcy trustee will be in position to make distribution in short order, I find that no irreparable injury will result to the claimants from the denial of a motion to stay; in fact, the grant of a motion to stay would be more likely to harm the interest of such creditors.

Next, the State of Missouri argues that the harm it will suffer outweighs the potential injury to the trustee if the stay is not granted. As shown, the State of Missouri itself will suffer no harm at all if the stay is not granted. Any impact on the farmers involved is minimal given the small amount of non-farmer claims in the case, and is more than outweighed by the ability of the bankruptcy trustee, as mandated by Section 557 of the Code, to distribute proceeds to claimants quickly.

And finally, the State contends that the stay is in the public interest. For the reasons previously expressed, the public interest mandates that these monies be distributed to those entitled to them as quickly as possible.

For all of the above reasons, the State of Missouri has not met its burden of proving the four elements necessary to obtain a stay of this Court's judgment pending ap-

peal. The motion for stay of order pending appeal is DENIED.